Murray ZUCKER, Plaintiff,

and

Salomon Brothers Inc.; Montgomery Securities, Plaintiffs–Appellants,

v.

MAXICARE HEALTH PLANS INC.; Fred W. Wasserman; Pamela K. Anderson aka Pamela Wasserman, Defendants–Appellees.

Murray ZUCKER; on behalf of himself and all others similarly situated, Plaintiffs–Appellees,

and

Maxicare Health Plans Inc.; Fred Wasserman; Pamela K. Anderson aka Pamela K. Wasserman; David M. Hallis; Samuel L. Westover; Gerald Zaid; Charles W. Smith, III; Randall Anderson; Howard Freedland; James A. McIntyre; Alan Bloom; Charles E. Lewis; Peter J. Ratican, Defendants–Appellees,

v.

ERNST & YOUNG, Successor–In–Interest to Ernst & Whinney, Objector–Appellant.

Nos. 92–55360, 92–55614.

United States Court of Appeals, Ninth Circuit.

Argued Aug. 2, 1993.

Submission deferred Aug. 13, 1993.

Resubmitted Jan. 5, 1994.

Decided Jan. 26, 1994.

478

Donald J. Schmid and Melanie T. Morris, Gibson, Dunn & Crutcher, Los Angeles, CA for appellants.

Michael D. Dempsey and Robert D. Donaldson, Cooper & Dempsey, and Michael S. Glassman, Clemens, Glassman and Clemens, Los Angeles, CA for appellees.

Before: NORRIS, WIGGINS, and O'SCANNLAIN, Circuit Judges.

WIGGINS, Circuit Judge:

### FACTS

Plaintiffs in May 1988 filed this class action in the district court against Maxicare Health Plans, Inc. ("Maxicare") and others. The complaint alleged violations of federal securities laws in connection with the sale of Maxicare securities, for which Salomon Brothers Inc., Montgomery Securities, and Ernst & Young (or its predecessor in interest, Ernst & Whinney) (collectively "Appellants") had served as underwriters and accountants. No Appellant was named as a defendant in the district court.

On or about July 15, 1988, plaintiffs filed three similar cases in L.A. County Superior Court (the "State Court Actions"). Appellants were named as defendants in these State Court Actions. The State Court Actions were premised on a theory of fraud not yet accepted by the California courts. The state trial court rejected this theory, and therefore sustained demurrers to plaintiffs' state court complaints. The California Court of Appeal affirmed the state trial court. On June 5, 1991, the California Supreme Court accepted the California Court of Appeal's decision for review.

In the meantime, plaintiffs had in federal court obtained without opposition the certification of a class including all those entities which had bought certain Maxicare securities during a certain period. Only those entities which were in privity with any defendant in the federal action (including the defendant Maxicare) during that period were excluded from the plaintiff class. Appellants were nonparties in the federal action and thus took no part in the class certification. However, Appellants were excluded from the plaintiff class because of their privity with Maxicare during the relevant time.

When the parties neared settlement in federal court, the plaintiffs amended their com-

plaint to add additional defendants and drop Maxicare, which had been discharged in bankruptcy. The complaint did not add Appellants as defendants, however. After lengthy negotiations, a "Stipulation of Settlement" (the "Settlement") was filed with the federal district court. The Settlement provided that the parties would seek an order from the district court extinguishing all claims for contribution, subrogation, or indemnification against the settling defendants and the participating Maxicare-affiliated insurer. The district court granted preliminary approval of the Settlement on October 31, 1991.

On November 12, 1991, the settling defendants moved for an order (1) declaring that the Settlement was made in good faith and (2) barring Appellants from making claims against the settling defendants and the insurer for contribution, subrogation, or indemnification. Counsel for the parties sent a copy of this motion to Appellants, the very entities named in the bar order, as "a courtesy." CR 80 at 5. Soon after receipt of this motion, Appellants specially appeared in the district court to object. Appellants also moved the court to declare that they had become members of the plaintiff class. Appellants argued that they were no longer in privity with any defendant, Maxicare being no longer a defendant, and so qualified for the plaintiff class.

The district court was not persuaded by Appellants' arguments. Rather, the district court made the following order in a document entitled "Final Judgment and Order of Dismissal with Prejudice as to Settling Defendants" (the "Judgment"):

17. Non-settling Defendants [including Appellants], and any persons who are or are alleged to be joint tortfeasors, co-tortfeasors or co-obligors with the Maxicare Parties and/or the Settling Defendants respecting the Released Claims, are hereby barred and permanently enjoined from asserting or prosecuting any and all claims, actions or proceedings against the Maxicare Parties and/or the Settling Defendants for equitable, partial, comparative, or complete contribution, subrogation or indemnity, however, denominated, arising out of or relating in any way to the Re-

leased Claims, either as cross-claims or counterclaims in the Litigation, as claims, cross-claims, counterclaims or third-party claims in any other action in any other court, arbitration, administrative agency, claim or forum, or in any other manner. All such claims are hereby extinguished, discharged, satisfied and made unenforceable.

Judgment ¶ 17. In effect, paragraph 17 bars Appellants from seeking contribution, subrogation, or indemnity against any of the settling defendants or against Maxicare's insurer. In a separate order, the district court ruled that Appellants were not members of the plaintiff class (the "Exclusion Order") and that Appellants would not be allowed extra time to file a claim of loss as a member of the plaintiff class.

Appellants appealed, claiming this court had jurisdiction under 28 U.S.C. § 1291. This court noted, however, the following provision in the Judgment:

In addition to any other requirement of law, *this Judgment shall not become Final and Effective unless one of the following conditions occurs:* (a) The California Supreme Court affirms the decision of the California Court of Appeal upholding the dismissal of the State Court Action, and such judgment becomes Final, ... or (b) The Los Angeles Superior Court has entered the State Court Order substantially in the form of Exhibit H to the Stipulation, and such Order has become Final....

Judgment ¶ 12 (emphasis added). Doubting the finality of the Judgment and our jurisdiction under § 1291, we ordered oral argument and supplemental briefing regarding jurisdiction.

Thereafter, the California Supreme Court on September 9, 1993 affirmed the decision of the California Court of Appeal upholding the decision of the state trial court in the State Court Actions. Counsel for the plaintiff class claimed in a letter to us that the California court's decision resolved our jurisdictional concerns. However, the Judgment contains the following, additional provision:

Within five (5) business days of the date upon which the conditions set forth in ¶¶ 12(a) or 12(b) above are satisfied in

accordance with the terms of the Stipulation, counsel for the Settling Defendants and Plaintiffs' Settlement Counsel shall file with this District Court a joint notice that such conditions have been met. This Judgment shall automatically become Final, and the Settlement shall become Effective, five (5) days after the filing of such joint notice.

Judgment ¶ 14(a). Paragraph 12 of the Judgment provided that the Judgment would "not become Final and Effective unless" one of the conditions occurred. However, nothing in paragraph 12 establishes when the Judgment becomes final and effective once one of the conditions has occurred; only paragraph 14 explains that. As of the date of this decision, the district court has no record of the filing of any notice that the conditions have been met, as is required by paragraph 14.

## ANALYSIS

### I. The Non-finality of the Judgment

 The Judgment by its own terms is not final or effective until the conditions requisite for finality occur. A final decision "generally is one which ends the litigation on the merits *and leaves nothing for the court to do but execute the judgment."* *Catlin v. United States,* 324 U.S. 229, 233, 65 S.Ct. 631, 634, 89 L.Ed. 911 (1945) (emphasis added). In this case, the parties to the settlement had five days within which to notify the district court that the California Supreme Court had affirmed the state trial court. The Judgment was to become final automatically within five days of such notification. No such notification occurred. Therefore, the Judgment by its own terms is neither final nor enforceable absent some modification of the Judgment or other action by the district court indicating that the Judgment is final notwithstanding the non-fulfillment of its terms. In short, the contingent nature of this Judgment means that the district court must still take action; the district court has more to do than simply execute the Judgment. *See Jones's Adm'r v. Craig,* 127 U.S. 213, 8 S.Ct. 1175, 32 L.Ed. 147 (1888) (dismissing an appeal from a conditional judgment for lack of finality because the record failed to show that the condition

to which the judgment was subject had occurred); *Peters v. Welsh Dev. Agency,* 920 F.2d 438 (7th Cir.1990) (same); *Navarro v. INS,* 539 F.2d 611 (7th Cir.1976) (holding non-final a judgment conditioned upon the filing and content of certain papers); *see also In re Pacific Far East Line, Inc.,* 654 F.2d 664, 666 n. 2 (9th Cir.1981) (treating an appeal from a contingent judgment as premature); *Taitt v. Chemical Bank,* 810 F.2d 29, 30 (2d Cir.1987) (implying that a judgment would not have become final had the condition imposed by the district court not occurred). Because the Judgment in this case remains subject to condition, we conclude that this court lacks jurisdiction.

 This decision may seem overly formalistic to some in light of Supreme Court instruction that § 1291 be given a "practical rather than a technical construction." *Stone v. Heckler,* 722 F.2d 464, 467 (9th Cir.1983) (quoting *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 546, 69 S.Ct. 1221, 1226, 93 L.Ed. 1528 (1949)). However, it is also true that

in a limited sense, form *is* substance with respect to ascertaining the existence of appellate jurisdiction. While it is always necessary to categorize a situation realistically, to place a given order according to its real effect, it remains true that the categories themselves were defined by the Congress in terms of form. Many interlocutory decisions of a trial court may be of grave importance to a litigant, yet are not amenable to appeal at the time entered, and some are never satisfactorily reviewable.

*Carroll v. United States,* 354 U.S. 394, 406, 77 S.Ct. 1332, 1340, 1 L.Ed.2d 1442 (1957). It is possible that the district court will summarily take notice of the affirmance of the state trial court by the California Supreme Court and certify that the Judgment is now final unconditionally, thereby rendering the orders contained therein presently enforceable against entities named in it. This court should not assume, however, in order to obtain jurisdiction, that the district court will take such action. Nor should this court snatch a case away from the district court before the district court has issued a binding,

enforceable judgment. If the district court considered the notice requirements of paragraph 14(a) sufficiently important to condition the finality of its judgment thereon, this court will not upstage that judgment.

Moreover, though the Judgment no doubt reflects the considered opinion of the district court, the Judgment as a document was submitted to the district court in its final form by all of the settling parties, pursuant to the Settlement. The parties were therefore clearly aware of the notice provision. Furthermore, not all of the parties responsible under the Judgment's terms for the joint notice are involved in this appeal. The court has a brief from the plaintiff class; but the court has a brief from only three of over fourteen defendants who will be bound by the Judgment. These absent defendants were jointly responsible for filing the notice with the district court. Unless the notice is filed, the court can only wonder whether one of these absent parties is for some substantive reason refusing to sign and file the notice, thus holding up the finality of the Judgment. *See Navarro,* 539 F.2d at 612. If such were the case, then certainly the district court would have more to do in this case before the Judgment became final. Because this court cannot be sure, the Judgment cannot be said confidently to be final.

 The Exclusion Order is also not final because the district court remains free to modify the plaintiff class until a final judgment is entered. *Weil v. Inv./Indicators, Research & Management, Inc.,* 647 F.2d 18, 25–26 (9th Cir.1981) (holding that denial of class certification is an unappealable interlocutory order until final judgment); *Arthur Young & Co. v. United States Dist. Court,* 549 F.2d 686, 697 (9th Cir.) (holding that interlocutory orders granting class certification are not appealable until final judgment unless the district judge certifies the question under 28 U.S.C. § 1292(b)), *cert. denied,* 434 U.S. 829, 98 S.Ct. 109, 54 L.Ed.2d 88 (1977); *Blackie v. Barrack,* 524 F.2d 891, 895–900 (9th Cir.1975) (holding that order conditionally certifying a class is not a final, appealable order), *cert. denied,* 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 *and cert. denied sub nom., Roberts v. Barrack,* 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 *and cert. denied sub nom., Touche Ross & Co. v. Barrack,* 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976). Likewise, the district court's refusal to extend the time necessary for Appellants to file a class claim is not a final order. Accordingly, because the Judgment is not final and the district court did not certify these questions under 28 U.S.C. § 1292(b), the court lacks jurisdiction to review these orders.

## II. The Parties' Arguments for Jurisdiction

The parties' supplemental briefs assert that this court has jurisdiction over the paragraph 17 order and the Exclusion Order on grounds other than § 1292(b) or the straightforward finality of the Judgment under § 1291. Notwithstanding that the specific contingency which prompted the letter briefs has been satisfied, the arguments made by the parties remain relevant as long as finality of the Judgment is subject to a condition. We therefore address each of the parties' arguments.

## A. The Paragraph 17 Order

The parties present three arguments that the court has jurisdiction over paragraph 17:

1) paragraph 17 is an injunction, appealable under 28 U.S.C. § 1292(a), and is not subject to the condition imposed by paragraph 12 or paragraph 14(a) of the Judgment because paragraph 17 is severable from the rest of the Judgment;

2) the Judgment is certified for immediate appeal under Federal Rule of Civil Procedure 54(b); and

3) jurisdiction is proper under *Gillespie v. U.S. Steel Corp.,* 379 U.S. 148, 85 S.Ct. 308, 13 L.Ed.2d 199 (1964).

### 1. Paragraph 17 as an Injunction

 Paragraph 17 on its face appears to enjoin absolutely Appellants from asserting claims for contribution, subrogation, or indemnity against certain parties. Were paragraph 17 separate from the remaining provisions of the Judgment, this court might have jurisdiction over an appeal from it under 28 U.S.C. § 1292(a), as the parties suggest.

The parties' argument that paragraph 17 is severable stems from the paragraph's concluding sentence:

This ¶ 17 is intended to be and should be construed as being severable from the remaining provisions of this Judgment and it is this District Court's view that it should be treated as a separate order in the event of any timely challenge to or appeal from this Judgment based upon the provision of this ¶ 17.

Judgment ¶ 17. The parties contend this sentence renders paragraph 17 a separate order. It does not. This court construes judgments with a view to "give effect to the intention of the court, not to that of the parties." *United States v. 60.22 Acres of Land,* 638 F.2d 1176, 1178 (9th Cir.1980), *cert. denied sub nom., Dickey Farms, Inc. v. United States,* 451 U.S. 985, 101 S.Ct. 2318, 68 L.Ed.2d 842 (1981). The language of paragraph 17 is plain: Paragraph 17 is a "separate order" only if there occurs any "timely challenge to or appeal *from this Judgment.*" Yet, no appeal can be made from "this Judgment" at the present time because the Judgment is not final. Because no appeal can be made from the Judgment at this time, paragraph 17 is not yet a separate order and is thus still subject to the provisions of paragraph 14(a). Because paragraph 17 remains subject to an unfulfilled condition, it is not yet an enforceable injunction, and Appellants are not yet bound by it. The court therefore lacks jurisdiction under 28 U.S.C. § 1292(a).

2. Paragraph 17 as Part of a Certified Partial Judgment Under Rule 54(b)

The parties also argue that the district court's certification of the Judgment under Rule 54(b) gives this court jurisdiction. Rule 54(b) provides that "[w]hen more than one claim for relief is presented in an action, . . . or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination" of certain factors. As noted, however, no such final judgment has been entered in this case: By its own terms the Judgment cannot become "Final and Effective" until the condition imposed by paragraph 14(a) occurs.

The parties' assertion that certification under Rule 54(b) applies is not wholly without justification. Judgment has been entered. Moreover, the Judgment is titled "Final Judgment and Order of Settlement with Prejudice as to Settling Defendants." Thus, in one sense the district court has directed the entry of a "final judgment." But the Judgment is final in name only. "The District Court *cannot,* in the exercise of its discretion, treat as 'final' that which is not 'final' within the meaning of § 1291." *Sears, Roebuck & Co. v. Mackey,* 351 U.S. 427, 437, 76 S.Ct. 895, 900, 100 L.Ed. 1297 (1956). Possibly the district court intended the Rule 54(b) certification to take effect when the Judgment became final. But because the finality of the Judgment is conditional, the Rule 54(b) certification, dependent on the existence of a "final judgment," is likewise conditional and does not confer jurisdiction.[1]

3. Paragraph 17 and *Gillespie v. U.S. Steel Corp.*

Finally, the parties argue with respect to paragraph 17 that jurisdiction should be found under the authority of *Gillespie v. U.S. Steel Corp.,* 379 U.S. 148, 85 S.Ct. 308, 13 L.Ed.2d 199 (1964). In *Gillespie,* the administratrix of an estate sued under both the Jones Act and the Ohio wrongful death statute to recover on behalf of the deceased, a seaman. 379 U.S. at 149–50, 85 S.Ct. at 309–10. The district court held the Jones Act to be the exclusive remedy and ordered

---

1. The Rule 54(b) certification will likely never take effect. The Rule "does not apply to . . . a multiple claims action in which all of the claims have been finally decided. It is limited expressly to multiple claims actions in which 'one or more but less than all' of the multiple claims have been finally decided and are found otherwise to be ready for appeal." *Sears, Roebuck & Co.,* 351 U.S. at 435, 76 S.Ct. at 899. In contrast, this Judgment "upon becoming Final and Effective . . . fully disposes of [this] action." Judgment ¶ 20. When the Judgment becomes final, the Rule 54(b) certification will be unnecessary. *Lundgren v. Freeman,* 292 F.2d 489, 490–91 (9th Cir.1961); *see Anderson v. Allstate Ins. Co.,* 630 F.2d 677, 680–81 (9th Cir.1980); *Lockwood v. Wolf Corp.,* 629 F.2d 603, 608 (9th Cir.1980).

stricken from the complaint all references to the Ohio statute. The administratrix appealed immediately, and the court of appeals held that it had jurisdiction under 28 U.S.C. § 1291. 379 U.S. at 151–52, 85 S.Ct. at 310–11. The Supreme Court affirmed the court of appeals' jurisdictional holding. The Court "reasoned that the possible delay of a number of years might cause a great injustice on the plaintiff's children because the claims for recovery for their benefit were effectively cut off so long as the district court's ruling stood." *Branson v. City of Los Angeles,* 912 F.2d 334, 336 (9th Cir.1990) .(analyzing the rationale behind *Gillespie* ).

*Gillespie* appears to instruct that an appellation of finality be given to a district court judgment when "the inconvenience and costs of piecemeal review on the one hand" are outweighed by "the danger of denying justice by delay on the other." . *Gillespie,* 379 U.S. at 152–53, 85 S.Ct. at 31 (citing *Dickinson v. Petroleum Conversion Corp.,* 338 U.S. 507, 511, 70 S.Ct. 322, 324, 94 L.Ed. 299 (1950)). *Gillespie* is distinguishable from the present case, however. In this case, delay of an appeal from the paragraph 17 order causes no injustice to any party or to Appellants because to date paragraph 17 has not become final or effective. Furthermore, no showing is made that Appellants have been required to pay money on account of their involvement in the transactions which resulted in this case or in the State Court Actions. Until Appellants have been required to pay, the bar to Appellants' rights to contribution, subrogation, or indemnification causes Appellants no harm. Moreover, the cost of deciding this appeal on its merits is potentially great. Judicial resources would be squandered if after the court hears and decides the merits of this appeal the Judgment never becomes final or enforceable in the district court.[2] *Gillespie* therefore does not give jurisdiction over the paragraph 17 order.

2. Even were this court to have jurisdiction statutorily over the appeal regarding paragraph 17, any opinion regarding *its* enforceability might well be hypothetical and thus advisory because paragraph 17 does not apply to Appellants unless facts antecedent to its enforceability are assumed. *Alabama State Fed'n of Labor v. McAdory,* 325 U.S. 450, 461, 65 S.Ct. 1384, 1389, 89

**B. The Exclusion Order**

**1. The Exclusion Order as a Collateral Order**

 With regard to the order excluding Appellants from the plaintiff class, the parties argue that this court has jurisdiction because the order is collateral under the doctrine expressed in *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. at 545–47, 69 S.Ct. at 1225–26. We disagree.

 Under *Cohen,* a decision of a district court is considered final under 28 U.S.C. § 1291 for purposes of appeal if the decision (1) is effectively unreviewable on appeal from a final judgment; (2) conclusively determines the disputed question; and (3) resolves an issue completely separate from, and collateral to, rights asserted in the action. *Cohen,* 337 U.S. at 545–47, 69 S.Ct. at 1225–26; *Van Cauwenberghe v. Biard,* 486 U.S. 517, 522, 108 S.Ct. 1945, 1949, 100 L.Ed.2d 517 (1988); *Mitchell v. Forsyth,* 472 U.S. 511, 525–30, 105 S.Ct. 2806, 2814–17, 86 L.Ed.2d 411 (1985). Failure to meet any one of these three requirements renders the *Cohen* doctrine inapplicable. *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 373–78, 101 S.Ct. 669, 673–75, 66 L.Ed.2d 571 (1981). This case fails to meet the third requirement.

 The Exclusion Order shows conclusively that the district court's decision was not separable from the rights asserted in the action. The court specifically stated:

The Underwriters are not typical of Settlement Class members because, *inter alia,* (1) the Underwriters were and are in privity with · Maxicare, having underwritten both debt and equity offerings for Maxicare, which securities are the subject of this action and/or companion litigation in the State court now being reviewed by the California Supreme Court, (2) the Underwriter's [sic] losses were sustained, in

L.Ed. 1725 (1945); *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 239–41, 57 S.Ct. 461, 463–64, 81 L.Ed. 617 (1937); *Liberty Warehouse Co. v. Grannis,* 273 U.S. 70, 74, 47 S.Ct. 282, 283, 71 L.Ed. 541 (1927). However, because this case lacks statutory grounds for jurisdiction, this court does not reach the constitutional issue.

whole or in part, from their business activities as Maxicare's underwriters, (3) the Underwriters knew and had access to non-public information concerning Maxicare, and (4) the Underwriter's [sic] had the potential to derive and/or derived economic benefit from their role as Maxicare's underwriters.

CR 118 at 2–3. By arguing for a spot in the plaintiff class, Appellants were asserting rights as plaintiffs in the action. Thus, their claims were not separable from the merits for purposes of the *Cohen* doctrine. The court's collateral order analysis in this case with respect the exclusion of an entity from an already certified class is no different from that of cases holding that the de-certification of a class is not a collateral order. *See Share v. Air Properties G. Inc.*, 538 F.2d 279, 284 (9th Cir.) ("[F]requently the issues upon which class certification turns are not separable from the merits. The order of the trial court makes it clear that this is such a case."), *cert. denied sub nom., Woodruff v. Air Properties G., Inc.*, 429 U.S. 923, 97 S.Ct. 321, 50 L.Ed.2d 290 (1976); *Blackie v. Barrack*, 524 F.2d at 897 ("The ... predominance tests, Fed.R.Civ.P. 23(b)(3), are determinations ... which may require review of the same facts and the same law presented by review of the merits."). Because the Exclusion Order fails one prong of the three-prong *Cohen* test, the order is not collateral under *Cohen* and this court lacks jurisdiction to review it.

2. The Exclusion Order Under *Gillespie*

██ Just as the order under Paragraph 17 does not warrant jurisdiction in this case under *Gillespie,* the order excluding Appellants from the plaintiff class likewise fails. Appellants have failed to show the requisite injustice. Appellants claim that if the court waits until the Judgment is final to allow an appeal from the order excluding them from the plaintiff class, the settlement fund will be distributed to the present class members long before Appellants can claim a share in it. Appellants may be correct. Even assuming Appellants have a valid claim, however, they have had rights against the settling parties for at least five years. They could have sued in a separate action, as the district court found, but they elected not to sue. CR 118 at 3. In effect, they have slept on their rights. Appellants cannot gain jurisdiction in this court by prejudicing their own chances at recovery.

## CONCLUSION

Because the Judgment is subject to condition, it is not final and we have no jurisdiction under 28 U.S.C. § 1291. The issues involved are not certified under 28 U.S.C. § 1292(b), nor is this non-final Judgment presently certifiable under Rule 54(b). Nor is jurisdiction proper under the *Cohen* or *Gillespie* doctrines. Furthermore, to date the Judgment involves no enforceable injunction, so no jurisdiction exists under 28 U.S.C. § 1292(a). This court accordingly lacks jurisdiction over this appeal. The appeal is therefore DISMISSED.

O'SCANNLAIN, Circuit Judge, concurring:

I join fully in Judge Wiggins' careful opinion and write separately only to emphasize the rule that parties cannot confer jurisdiction upon this court. Despite ample opportunity, the parties to this appeal never have satisfied the explicit conditions for finality in the district court's order. We lack the authority to review that order until the parties comply with these conditions. Although the parties nevertheless may find it mutually convenient to proceed with this appeal, we are not free to disregard our lack of jurisdiction for the sake of expediency.